# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

SARAH LINDSEY,                          )
                                        )
        Plaintiff,                      )
                                        )
        vs.                             )        CASE NO.  5:15-CV-0234-SLB
                                        )
CAROLYN  W.  COLVIN,  Acting            )
Commissioner of Social Security,        )
                                        )
        Defendant.                      )

## MEMORANDUM OPINION

Plaintiff Sarah Lindsey brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits [DIB].  Upon review of the record, the parties' submissions, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be reversed and this matter will be remanded for an award of benefits.

## I.  PROCEDURAL HISTORY

On September 29, 2011, Ms. Lindsey protectively filed an application for a period of disability and DIB, alleging that she had become unable to work on August 15, 2011.  (Doc. 7-3 at R.10; doc. 7-6 at R.123.)[1]  The application was denied initially.  (Doc. 7-5 at R.52.)

---

[1]Reference to a document number, ["Doc."], refers to the number assigned to each document as it is filed in the court's record. Reference to a page numbers in the Commissioner's record, ["R."], refers to the page number assigned to the record by the Commissioner.

Thereafter, Ms. Lindsey requested a hearing before an Administrative Law Judge [ALJ], (*id*. at R.57-58), which was held on March 26, 2013, (doc. 7-3 at R.26).  Following the hearing, the ALJ found that Ms. Lindsey was not disabled; therefore, he denied her application on May 17, 2013.  (Doc. 7-3 at R.19.)

Ms. Lindsey asked the Appeals Council to review the ALJ's decision.  (*See id*. at R.5.) The Appeals Council denied the request for review, stating that it had "found no reason under [its] rules to review the [ALJ's] decision." (*Id*. at 1.)  Therefore, "the [ALJ's] decision is the final decision of the Commissioner of Social Security in [Mr. Lindsey's] case." (*Id*.)

Ms. Lindsey filed an appeal in this court on February 8, 2015.  (Doc. 1.)

## II.  <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to the Commissioner's factual findings.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)) (internal

quotations and other citation omitted).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)).  "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo.  *Cornelius*, 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law."  *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for DIB.  *See* 20 C.F.R. § 404.1520; *see also Bowen v. City of New York,* 476 U.S. 467, 470 (1986).  "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for DIB benefits] if [she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §1382c(a)(3)(A).  The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[2] 20 C.F.R. § 404.1572. If the claimant is working and that work is substantial gainful activity, the Commissioner will find that she is not disabled regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 404.1520(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (11th Cir. 2012).[3]

---

[2]The regulation provides:

(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572(a)-(c).

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir.

The ALJ found that Ms. Lindsey had not engaged in substantial gainful activity during the period from her alleged onset date, August 15, 2011, through the date of his decision, May 17, 2013.  (Doc. 7-3 at R.18-19.)

### 2.  Severe Impairments

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment, or combination of impairments, that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).  The regulations provide: "[I]f [the claimant does] not have any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities, [the Commissioner] will find that [she does] not have a severe impairment and [is], therefore, not disabled."  20 C.F.R. § 404.1520(c). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a).  A claimant may be found disabled based on a combination of impairments even though none of the

R. 36-2 (emphasis added).

individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523.  A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Lindsey had "the following severe impairments:  chiari malformation with associated chronic headaches, hypertension, a history of chronic diverticulitis, obesity, and depression."  (Doc. 7-3 at R.12.)

### 3.  The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings].  If the claimant's impairment meets or medically equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).  The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Ms. Lindsey did not have an impairment or combination of impairments that met or medically equaled the severity of a Listing.  (Doc. 7-3 at R.12.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f). At step four, the Commissioner compares her assessment of the claimant's residual functional capacity [RFC] with the physical and mental demands of the claimants's past relevant work. 20 C.F.R. § 404.1560(b). "Past relevant work" is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for her to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find she is not disabled. 20 C.F.R. § 404.1520(e). The claimant bears the burden of establishing that her impairment prevents her from performing past work. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found:

> [T]he claimant has the [RFC] to perform medium work as defined in 20 C.F.R. 404.1567(c), with occasional lifting and/or carrying up to 50 pounds and frequent lifting and/or carrying up to 25 pounds. She can stand and/or walk for six hours and sit for six hours in an eight-hour workday. She would have no limitations with pushing and/or pulling. She should not climb ladders, ropes, and scaffolds, but can frequently perform all other postural maneuvers. She should not work at unprotected heights or around hazardous machinery. Work should be unskilled and involve only simple instructions and occasional interaction with others. She may miss one day of work a month.

(Doc. 7-3 at R.13.) Based on his finding regarding her RFC and the testimony of a vocational expert [VE], the ALJ found that Ms. Lindsey was unable to perform her past relevant work as a receptionist and customer service clerk. (*Id*. at R.17.)

7

### 5.  Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant – in light of her RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy.  *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. § 404.1520(c)(1).  The regulations provide:

> (1)  If we find that your [RFC] does not enable you to do any of your past relevant work . . ., we will use the same [RFC] assessment when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your [RFC] and the vocational factors of age, education, and work experience, as appropriate in your case. . . .  Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

> (2)  In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your [RFC] and vocational factors.  We are not responsible for providing additional evidence about your [RFC] because we will use the same [RFC] assessment that we used to determine if you can do your past relevant work.

*Id*. (c)(1)-(2).  If the claimant is not capable of performing other work, the Commissioner must find the claimant is disabled.  20 C.F.R. § 404.1520(g).

The ALJ found that Ms. Lindsey, who was born in 1956, was an individual closely approaching advanced age on the alleged onset date and "subsequently changed age category to advanced age."  (Doc. 7-3 at R.17.)  She had at least a high school education and could communicate in English.  (*Id*.)  The ALJ consulted a VE; the VE testified that an individual

with Ms. Lindsey's RFC and vocational factors could perform the jobs of hand packager, stock clerk, and housekeeper, which jobs existed in significant numbers in the national economy.  (*Id*. at R.18, R.36-37.)  Based on this testimony, the ALJ found Ms. Lindsey could perform other work.  (*Id*. at 18.)

Therefore, the ALJ found that Ms. Lindsey had not been under a disability at any time from August 15, 2011, the alleged onset date, through May 17, 2013, the date of the ALJ's decision.  (*Id*. at R.18-19.)

## B.  ISSUES ON APPEAL

Ms. Lindsey states her issues on appeal as follows:

Whether the ALJ failed to properly evaluate the credibility of the Plaintiff's testimony of disabling symptoms consistent with the Eleventh Circuit Pain Standard.

and

Whether the ALJ failed to properly articulate good cause for according less weight to the opinions of the Plaintiff's treating physician.

(Doc. 9 at 3, 10.)  For the reasons set forth below, the court finds that the ALJ's credibility decision is not supported by substantial evidence and, therefore, is due to be reversed.  The court pretermits discussion of whether the ALJ erred in the weight given to Ms. Lindsey's treating physician's opinions that Ms. Lindsey was disabled.

"If proof of disability is based upon subjective evidence and a credibility determination is, therefore, critical to the decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility

finding." *Duval v. Comm'r of Soc. Sec.*, 628 Fed. Appx. 703, 711 (11th Cir. 2015)(quoting

*Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).

> Pain alone can be disabling, even when its existence is unsupported by objective evidence. *Walker v. Bowen,* 826 F.2d 996, 1003 (11th Cir. 1987). The [ALJ] must consider a claimant's subjective testimony of pain if [she] finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen,* 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986).   After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.  *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984).  If the ALJ refused to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility.  *Walker,* 826 F.2d at 1004.

*Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).  "A clearly articulated credibility

finding with substantial supporting evidence in the record will not be disturbed by a

reviewing court."  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)(citing *MacGregor*

*v. Bowen,* 786 F.2d 1050, 1054 (11th Cir. 1986)).   "Regulation 96-7p and 20 C.F.R. §§

404.1529(c)(4) and 416.929(c)(4) require the ALJ to consider the consistency of subjective

complaints."  *Majkut v. Comm'r of Soc. Sec.*, 394 Fed. Appx. 660, 663 (11th Cir. 2010); *see*

*also* SSR 16-3p, 2016 WL 1119029, *1 (This new ruling, which replaces SSR 96-7p, states,

"we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our

regulations do not use this term.  In doing so, we clarify that subjective symptom evaluation

is not an examination of an individual's character.  Instead, we will more closely follow our

regulatory language regarding symptom evaluation.").  Inconsistencies and conflicts in the

record evidence and the claimant's statements about her symptoms may provide a basis for

discounting the extent of claimant's statements.  The Commissioner's regulations state:

> In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence . . . .  We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled.  We will consider whether there are any ***inconsistencies*** in the evidence and the extent to which there are any ***conflicts*** between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you.  Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as ***consistent*** with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4)(emphasis added); *see*, *e.g*, *Dyer v. Barnhart*, 395 F.3d 1206,

1211 (11th Cir. 2005); *Wilson*, 284 F.3d at 1226.  Also, evidence that the claimant is

malingering or otherwise magnifying or exaggerating her symptoms is evidence that the

symptoms are less likely to reduce the claimant's capacity to perform work related activities.

*See*, *e.g.*, *Miles v. Comm'r of Soc. Sec.*, No. 15-14454, 2016 WL 3402526, *2 (11th Cir. June

21, 2016); *Mills v. Astrue*, 396 Fed. Appx. 621, 623 (11th Cir. 2010); *Moore v. Barnhart*,

405 F.3d 1208, 1213 (11th Cir. 2005); *Sanders v. Astrue*, 974 F. Supp. 2d 1316, 1327 (N.D.

Ala. 2013).

At the hearing before the ALJ, Ms. Lindsey testified as follows:

Q.  [Ms. Lindsey's attorney]  Ms. Lindsey, have you worked anywhere
since August 15th of 2011?

A.  No.

Q.  Can you please tell the court why you stopped work at that time?

A.  The pain in my head was so bad that I had to stay in bed and take something for pain, and I just couldn't, I just couldn't get up.  I couldn't concentrate.  You know, I just – my work, if, if you miss often by a number, you lose a lot of money and I just couldn't concentrate to do the work.

Q.  Were you missing days at work?

A.  Yes.

Q.  Do you remember how many days you missed –

A.  No.

. . .

Q.  And since that time, have your headaches gotten better, worse, or stayed about the same?

A.  They've stayed about the same.  They – I have good days and bad days where the pain is not as bad, but I do have headaches everyday.

Q.  Okay, how many bad days do you say you have out of a month regarding your headaches?

A.  Fifteen to twenty.

Q.  And on those days, how would you rate your pain with the headaches, on a scale of zero to ten with ten being the type of pain, you are in the emergency room getting treatment and zero being no pain at all?

A.  Well, they supply me with pain medication at home, but my pain level would be about a ten on the bad days.

Q.  And what can you bring it down to with the medication?

A.  I can bring it down sometimes to about an eight or something if it's real bad ones.

12

Q. On those days, are you able to get up and function?

A. No.

Q. How do you spend your day when you're having a bad headache?

A. Laying down, in a darkened room, no sound.

Q. And you're also having trouble with your memory?

A. Yes.

Q. What kind of problems are you having with that?

A. I might can read something, like – or hear something, and then by the time I turn around, I can't remember what I was told.

Q. Does your – do you live with your husband?

A. Yes.

Q. What kind of things does he have to help you remember to do?

A. Everything.  He – I forget to take my medication.  He doses it out for me so that I don't mess it up because I have messed it up several times.

Q. Are you still able to cook?

A. No, I hardly ever cook.

Q. Do you – go ahead.

A. I try sometimes, but usually I mess it up, so.

Q. Can you concentrate long enough to watch a movie during the day?

A. No, not, not an entire movie.  Most of the things I watch, if I feel well enough to watch, it's like a 30-minute program or something like that, and I may record it if I want to see it all, and when I feel better I may watch it later.

13

Q.  What symptoms are you having with your depression?

A.  I have real bad anxiety attacks.  I don't go out much.  If I go out, I try to go out in places where I can see light in the door to get out, but I just start breaking out in a sweat and getting really – you know, I want to get out there.

Q.  Do you have panic attacks?

A.  Yeah.

Q.  Do you have them even when you don't leave your home?

A.  Not so much as when I leave my home.  I have had some at home, but it's mostly when I try to go out.

. . .

Q.  Do you feel like your treatment has been effective?

A.  Not really.

(Doc. 7-3 at R.29-31.)

In his Decision, the ALJ found:

The claimant reported her depression and migraine headaches[4] were her primary problems, but treatment records have not supported the subjective complaints of the claimant.  In fact, despite her headaches, which she reported she had had for years, the claimant had continued to work for a significant period of time and evidence has not shown their intensity or their duration have increased.  In fact, some improvement has been evidenced with her medications.  The undersigned also finds no particular support for the claimant's complaints regarding difficulty with memory and concentration. While the claimant has reported significant limitations in her daily activities,

---

[4]According to the National Institutes of Health, "A migraine headache involves severe pain.  It usually occurs with other symptoms, such as vision changes, sensitivity to sound or light, or nausea." *Headaches:  Causes*, https://medlineplus.gov/ency/article/003024.htm.

14

> objective findings failed to support the severity alleged and the undersigned
> finds the claimant is not fully credible.

(*Id*. at R.17.)  The court finds that these findings are not support by the record.

The court notes that "neither the [Social Security Administration] nor the federal courts require that an impairment, including migraines, be proven through objective clinical findings." *Thompson v. Barnhart*, 493 F. Supp. 2d 1206, 1215 (S.D. Ala. 2007)(citing, *inter alia*, *Ortega v. Chater*, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996)), *quoted in Creel v. Wachovia Corp.*, No. 08-10961, 2009 WL 179584, *8 n.20 (11th Cir. Jan. 27, 2009)("Neither party has identified any objective tests that would automatically establish the existence of neurologically-based migraines, and there appears to be no set standard for establishing the existence of migraines.").  The court finds that the lack of objective evidence is not substantial evidence of the severity of Ms. Lindsey's subjective symptoms.

Contrary to the ALJ's statement, the medical records show that Ms. Lindsey reported an increase in the severity and duration of her headaches in August 2011.   On August 3, 2011, Angelia Elliott, M.D., Ms. Lindsey's treating physician, noted that Ms. Lindsey presented with the return of her chronic headaches.  (Doc. 7-8 at R.252 ["She is still having problems with her chronic headaches.  They have started back again."].)  That day, Dr. Elliott noted, "We had a long discussion about her job.  I am going to put her on a leave of absence for now but I am afraid that she may be to the point where she is not going to be able to continue to work full-time."  (*Id*. at R.252-53.)  Dr. Elliott referred Ms. Lindsey to a neurologist.  (*Id*. at R.252.)  Ms. Lindsey was seen at Cullman Primary Care – Neurology

by Doctors Paul Gilreath and Sheri Swader.   On August 31, 2011, Dr. Gilreath diagnosed

Ms. Lindsey with mixed-type headache and possibly a rebound headache,[5] given her use of

the pain relieving drug, Lortab.  (*Id*. at R.330.)  He noted that, although Ms. Lindsey reported

she had had headaches for twenty years, the headaches "started back" again in 2010.  (*Id*. at

R.327.)   Thereafter, Ms. Lindsey was seen by Dr. Swader in November 2011, who also

noted that Ms. Lindsey's headaches had increased since 2010 and "significantly intensified"

in August 2011.  (*Id*. at R.331.)

According to Dr. Swader, Ms. Lindsey had a "***constant*** global headache anywhere

from 8-10+/10 in severity" with nausea and sensitivity to light and sound; she obtained

"some relief for 24-36 hours" from injections of Demerol, a pain killer, and Phenergan, an

anti-nausea medication, for relief.  (*Id*. [emphasis added].)  Dr. Swader diagnosed Ms.

Lindsey with "***constant*** headaches that likely [are] chronic intractable migraine headache[s],"

and "some difficulty with her memory."  (*Id*. at R.333 [emphasis added].)  Dr. Swader noted

that Ms. Lindsey was "having a lot of difficulty with headaches and neck pain" in February

2012.  (Doc. 7-9 at R.430.)  The headaches were ***daily***, in the occipital area or, occasionally,

---

[5]"Rebound headaches are headaches that keep coming back.  They often occur from overuse of pain medicines. For this reason, these headaches are also called medicine overuse headaches.  People who take pain medicine more than 3 days a week on a regular basis can develop this type of headache."  *Headache: Causes*,  https://medlineplus.gov/ency/article/003024.htm.   "[A]ny medication taken for pain relief can cause rebound headaches, but only if [an individual' already [has] a headache disorder.  Pain relievers taken regularly for another condition, such as arthritis, have not been shown to cause rebound headaches in people who never had a headache disorder."  Mayo Clinic Staff, *Diseases and Conditions: Rebound headaches*, http://www.mayoclinic.org/diseases-conditions/rebound-headaches/basics/definition/con-20024096.

in the frontal area, that are **8-9/10 in severity**.  (*Id*. at R.430, R.433 [emphasis added].)  The ALJ's findings – (1) that the intensity and duration of her headaches had not increased and (2) that "despite her headaches, which she reported she had had for years, [Ms. Lindsey] had continued to work for a significant period of time" –  are not supported by substantial evidence.

The court also finds that the ALJ erred in finding that Ms. Lindsey's "complaints regarding difficulty with memory and concentration" are not supported by the record.  In August 2011, Dr. Elliott noted  Ms. Lindsey was "having a lot of problems with her memory." (Doc. 7-8 at R.252.)  Dr. Swader also noted that Ms. Lindsey continued to have "some difficulty focusing" and "some trouble with her memory" that had improved.  (*Id*. at R.430; *see also id*. at R.433.)  In April 2012, Dr. Swader noted that Ms. Lindsey's continued to have difficulty with her **focus** and **memory**, as she had taken and used notes during the office visit.  (Doc. 7-9 at R.423, R.425-27 [emphasis added].)  In May 2012, Ms. Lindsey's counselor noted that she had exhibited memory loss as evidenced by "forgetting her phone number and simple directions." (Doc. 7-10 at R.475.)  On June 5, 2012, Dr. Swader noted, "I think most of [Ms. Lindsey's] memory problems are multifactorial and related to her chronic headaches, pain, depression and medication.[6] . . .  Once the headaches are under better control she may need neuropsych testing in the future." (Doc. 7-9 at R.416 [footnote

---

[6]At this time, Ms. Lindsey was on a number of prescriptions for pain, including ketorolac tromethamine, Lortab, gabapentin, and oxcarbazepine. (Doc. 7-9 at R.417.) She also was taking a number of antidepressants and anti-anxiety medications, including buspirone, Celexa, Klonopin, trazodone, and Lexapro.  (*Id*.)

added].)  The record contains no evidence that Ms. Lindsey had "neuropsych testing."  The court has found nothing in the record that contradicts Ms. Lindsey's reports to her treating physicians, which these physicians credited, regarding her difficulties concentrating and remembering.  The court finds the ALJ's finding to the contrary is not supported by substantial evidence.

The court finds that Ms. Lindsey's medical records and her limited daily activities are consistent with her complaints of disabling pain and other symptoms.  The ALJ's articulated reasons for  finding her statements "not fully credible" are not supported by substantial evidence.

Also, the ALJ found:

> Notes from Dr. Elliott in November 2012 showed the claimant had obtained a second opinion about her headaches, but she reported the results were the same and indicated she was 'really happy with Dr. Swader and is planning to continue with her' (Exhibits 16F and 17F).  It seems reasonable to assume, if the claimant was not receiving results from treatment that improved her level of functioning, she would have sought treatment from other sources.

(Doc. 7-3 at R.15; *see also* doc. 7-10 at R.506 [Dr. Elliott noted, "[S]he did get a second opinion about her headaches and the results were the same[;] she is really happy with Dr. Swader and is planning to continue with her."].)  The court does not disagree with the assumption that Ms. Lindsey decided to stay with Dr. Swader because she had received some improvement under Dr. Swader's treatment.  However, an assumption that Ms. Lindsey's level of functioning under Dr. Swader's treatment had improved to a level that would allow her to work is not supported by the evidence that she had decided to stay under Dr. Swader's

18

treatment after receiving an opinion from another doctor that was the same as Dr. Swader's opinion.  On November 29, 2012, Dr. Swader noted, "[Ms. Lindsey] has difficulty with chronic headaches. . . .  They are essentially every day.  Sometimes they will worsen for a period of time.  On average they're 7-8/10 in severity.  . . .  Demerol and Phenergan injections at least make [them] tolerable but [do] not actually resolve the headache."  (Doc. 7-9 at R.452.)  The record does not contain any evidence from the physician who gave the second opinion.  However, assuming the second-opinion physician told Ms. Lindsey that he or she would treat her headaches in the same manner as Dr. Swader with the same results, such an opinion would not be cause to change physicians in search of medical improvement. Certainly, the failure to change physicians under these circumstances does not support a reasonable inference that Ms. Lindsey's headaches had improved to better than 7-8/10 in severity on average every day, as indicated in Dr. Swader's notes.

The treatment records are consistent and demonstrate that Ms. Lindsey's treating physicians considered her to be experiencing pain and difficulty with remembering and concentrating to the severity, frequency, and duration to which Ms. Lindsey had testified. The ALJ's determination that Ms. Lindsey's statements about her symptoms were not fully credible is not supported by substantial evidence.  [I]f the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true." *Davis v. Astrue*, 478 F. Supp. 2d 1342, 1346 (N.D. Ala. 2007).

In this case, the VE testified as follows:

Q. [ALJ] Okay. . . .  Now, I've heard testimony in regard to the, the claimant's pain, discomfort, and other restrictions and limitations, and – but based on that, let me ask you some additional restrictions and hypotheticals.

Let's assume that the individual as a result of perhaps it could be pain, perhaps it could be psychological reasons, would have problems with persistence, pace, and concentration to the extent that even unskilled work would be precluded in that, she would be unable to perform such work for periods of up to two consecutive hours without a work break, . . . what would happen then?

A. [VE]  I believe that would omit all employment opportunities.

Q.  And kind of similar hypos to the one I just gave you, let's assume she would require frequent work breaks beyond those that are generally scheduled, what affect would that have?

A.  Again that would prevent a person from being able to maintain any types of competitive employment.

Q.  And absenteeism, let's assume she'd miss two or at least two days of work per month, it would be a minimum of two to being something far higher, what affect would a steady limit of two days each month, and that . . . that would be month after month of course?

A.  That level of absenteeism is excessive to being able to maintain any type of job.

Q.  And generally, let's assume the individual would be precluded from employment, a standard workday on a regular and sustained basis and a standard workweek, which I'll define as ranging anywhere from 32 to 40 hours, what affect would that have?

A.  That would prevent a person from being able . . . to maintain employment on a regular basis.

(Doc. 7-3 at R.38-39.)

"This court . . . may . . . remand the case for an entry of an order awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is

clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  In this case, finding insufficient evidence to discredit Ms. Lindsey's testimony – and, thus, assuming her testimony regarding her symptoms is true – and considering the testimony of the VE, the court finds "the evidence establishes disability without any doubt."  *See id*.

Therefore, the Commissioner's decision denying Ms. Lindsey's claim for a period of disability and DIB will be reversed and remanded with instructions that Ms. Lindsey be awarded the benefits claimed.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be reversed and this cause remanded for an award of benefits claimed.  An Order in conformity with the Memorandum Opinion will be entered contemporaneously.

**DONE** this 22nd day of September, 2016.


Sharon Lovelace Blackburn
SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE

21